# EXHIBIT A



## Service of Process Transmittal Summary

**TO:**   Viraj Telang
LYFT, INC.
185 BERRY ST STE 400
SAN FRANCISCO, CA 94107-1725

**RE:**   **Process Served in District of Columbia**

**FOR:**   Lyft, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: JANE DOE // To: Lyft, Inc. |
| **DOCUMENT(S) SERVED:** | Summons, Order, Attachment(s), Complaint, Jury Demand, Information Sheet, Motion, Certificate, Exhibit(s) |
| **COURT/AGENCY:** | District of Columbia - U.S. Supreme Court, DC<br>Case # 2023CAB002577 |
| **NATURE OF ACTION:** | Personal Injury - Vehicle Collision - 04/30/2022 |
| **PROCESS SERVED ON:** | C T Corporation System, Washington, DC |
| **DATE/METHOD OF SERVICE:** | By Process Server on 06/21/2023 at 17:46 |
| **JURISDICTION SERVED:** | District of Columbia |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days after service of this summons upon you, exclusive of the day of service |
| **ATTORNEY(S)/SENDER(S):** | Joseph Cammarata<br>CHAIKIN, SHERMAN, CAMMARATA & SIEGEL, P.C.<br>1232 17th St. NW<br>Washington, DC 20036<br>202-659-8600 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/22/2023, Expected Purge Date: 06/27/2023 |
| | Image SOP |
| | Email Notification,  John Pellegrini  jpellegrini@lyft.com |
| | Email Notification,  Viraj Telang  virajt@lyft.com |
| | Email Notification,  Christopher Youngblood  cyoungblood@lyft.com |
| | Email Notification,  Eboni James  ebonijames@lyft.com |
| | Email Notification,  Ty Lim  legalbilling@lyft.com |
| | Email Notification,  Devin Armstrong  devina@lyft.com |
| | Email Notification,  Legal Sop  legal-sop@lyft.com |
| | Email Notification,  Zermani Kadiam  zkadiam@lyft.com |



**CT Corporation**
**Service of Process Notification**
06/21/2023
CT Log Number 544121190

**REGISTERED AGENT CONTACT:**         C T Corporation System
1015 15th Street, NW
Suite 1000
Washington, DC 20005
877-564-7529
MajorAccountTeam2@wolterskluwer.com

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                          Wed, Jun 21, 2023
**Server Name:**                   Drop Service

| Entity Served | LYFT, INC. |
|---|---|
| Case Number | 2023CAB002577 |
| Jurisdiction | DC |

| Inserts |
|---|
|  |





**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Jane Doe
_____
                                    Plaintiff
                vs.

                                                    Case Number    2023-CAB-002577

Lyft, Inc.
_____
                                    Defendant

## SUMMONS

To the above named Defendant:

      You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

      You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Joseph Cammarata
_____
Name of Plaintiff's Attorney

1232 17th St. NW
_____
Address
Washington. DC 20036

202-659-8600
_____
Telephone

*Clerk of the Court*

By _____
                        Deputy Clerk

Date _____    **June 1, 2023**

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오     የአማርኛ ተርጓሚ ለማግኘት (202) 879-4828 ይደውሉ

      IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

      If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

Jane Doe
_____
                                        Demandante

        contra

Lyft, Inc.                                        Número de Caso: _____
_____
                                        Demandado

## CITATORIO

Al susodicho Demandado:

        Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

        A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Joseph Cammarata                                *SECRETARIO DEL TRIBUNAL*
_____
Nombre del abogado del Demandante

1232 17th St. NW                          Por: _____
_____
Dirección                                                Subsecretario
Washington, DC 20036

202-659-8600                              Fecha _____
_____
Teléfono
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
번역을원하시면(202) 879-4828로전화하십시오        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

        IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

        Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original



**Superior Court of the District of Columbia**
**Civil - Civil Actions Branch**
**500 Indiana Ave NW, Room 5000, Washington DC 20001**
**(202) 879-1133 | www.dccourts.gov**

**Case Number:** 2023-CAB-002577

**Case Caption:** Jane Doe v. Lyft, Inc. et. al.

## INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| Friday, 08/18/2023 | 9:30 AM | Remote Courtroom 212 |
| **Please see attached instructions for remote participation.** | | |
| Your case is assigned to Associate Judge Yvonne Williams. | | |

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated above. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4.

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated below, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order.  Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

*Chief Judge Anita M. Josey-Herring*

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb212

   Meeting ID: 129 440 9070

2) When you are ready, click "Join Meeting".

3) You will be placed in the lobby until the courtroom clerk gives you access to the hearing.


**Or to Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

2) Enter the Webex Meeting ID listed above followed by "##"


**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.

2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.

3) For case questions, call the Civil Actions Branch Clerk's Office at (202) 879-1133.

## **ACCESSIBILITY AND LANGUAGE ACCESS**

### **Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov . The D.C. Courts does not provide transportation service.

### **Interpreting and Translation Services:**

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

### **Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

### **የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:**

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘረውን የጸሀፊ ቢሮ (ክለርክ'ስ አፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.



## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

📞 202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

📞 Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.

- You can also find the list of legal services providers at dccourts.gov/coronavirus by clicking on the link that says, "List of Legal Service Providers for Those Without an Attorney."

- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.

- Witnesses: tell the judge if you want a witness to testify at your hearing.

- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing



- Join the hearing a few minutes early!

- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.

- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.

- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).

- Speak slowly and clearly so everyone hears what you are saying.

- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.

- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.

- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.

- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.

- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings
### (Click here for more information)



- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.

- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.

- Look at the camera when you speak and avoid moving around on the video.

- Wear what you would normally wear to court.

- Sit in a well-lit room with no bright lights behind you.

- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.




# District of Columbia Courts
# Tips for Using DC Courts Remote

The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings. The Courts are committed to enhancing access to justice for all.

There are six remote access sites throughout the community which will operate: **Monday – Friday, 8:30 am – 4:00 pm.**

### The remote site locations are:

| | | |
|---|---|---|
| **Remote Site - 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 |  | **Remote Site - 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
| **Remote Site - 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | | **Remote Site - 5**<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Remote Site - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | | **Remote Site - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*** No walk-ins at this location*** |

If you want to use a remote site location for your hearing, call **202-879-1900** or email DCCourtsRemoteSites@dcsc.gov **at least 24 hours before your hearing to reserve a remote access computer station**. If you require special accommodations such as an interpreter for your hearing, please call **202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements**.

**\*You should bring the following items when you come to your scheduled site location\***

1. Your **case number** and any **hyperlinks** provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.

**\*Safety and security measures are in place at the remote sites.**

**Contact information to schedule your remote access computer station:**
Call: **202-879-1900**
Email: DCCourtsRemoteSites@dcsc.gov



# Tribunales del Distrito de Columbia

## Consejos para usar los sitios de audiencia remota de los Tribunales de DC

Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay seis sitios de acceso remoto que funcionarán de l**unes a viernes, de 8:30 am a 4:00 pm**.

Los centros de acceso remoto son:



| **Sitio Remoto - 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Sitio Remoto - 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
|---|---|
| **Sitio Remoto - 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Sitio Remoto - 5**<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Sitio Remoto - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | **Sitio Remoto - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*No se puede entrar sin cita previa* |

Si desea usar un sitio remoto para su audiencia, llame al **202-879-1900** o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov **al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto. Si** necesita adaptaciones especiales, como un intérprete para la audiencia, llame **al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.**

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***

1. Su **número de caso** y todos los **hipervínculos** que le hayan proporcionado los Tribunales para la audiencia programada.

2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.

3. Materiales para tomar nota, como papel y lápiz.

**\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.**

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: **202-879-1900**
Correo electrónico: DCCourtsRemoteSites@dcsc.gov

eFiled
04/27/2023 2:40:17 PM
Superior Court
of the District of Columbia

### IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | |
|---|---|
| **JANE DOE** | : |
| c/o Chaikin, Sherman, Cammarata | : |
|   & Siegel, P.C. | : |
| 1232 17th Street, N.W. | : |
| Washington, DC 20036 | : |
| | : |
|       Plaintiff, | : |
| | : |
|     v. | :    **Case No.** |
| | :       2023-CAB-002577 |
| **LYFT, INC.** | : |
| 185 Berry Street, Suite 5000 | : |
| San Francisco, CA 94107 | : |
|     **SERVE:** | : |
|     CT Corporation System | : |
|     1015 15th Street, N.W. | : |
|     Washington, DC 20005 | : |
| | : |
|     and | : |
| | : |
| **NAOUFAL JELLALI** | : |
| 3701 S. George Mason Drive | : |
| Unit 2201 | : |
| Falls Church, VA 22041 | : |
| | : |
|       Defendants. | : |
| | : |

### COMPLAINT

COMES NOW the Plaintiff, Jane Doe,[1] by and through her attorneys, Joseph Cammarata, Esquire, Kayann S. Chambers, Esquire, and the law firm of Chaikin, Sherman, Cammarata & Siegel, P.C., and respectfully represents as follows:

---

[1] "Jane Doe" is a pseudonym. Plaintiff is separately filing a motion for leave to proceed using this pseudonym.

**JURISDICTION**

1.    This Court has subject matter jurisdiction over this matter pursuant to D.C. Code §11-921, and because the incident complained of herein occurred in the District of Columbia.

2.    This Court has personal jurisdiction over Defendant Lyft, Inc. (hereinafter "Lyft") pursuant to D.C. Code § 13-422 and D.C. Code § 13-423 in that Defendant Lyft, directly and through its agent, apparent agent, servant, and/or employee, Defendant Naoufal Jellali, caused tortious injury in the District of Columbia by act or omission.

**PARTIES**

3.    Plaintiff was, at all times relevant hereto, a citizen and resident of Washington, DC.

4.    Defendant Lyft is a common carrier and rideshare service transportation company headquartered in San Francisco, CA, which is authorized and doing business in the District of Columbia.

5.    Defendant Naoufal Jellali was, at all times relevant hereto, a citizen and resident of Fairfax, VA, working in the Commonwealth of Virginia and District of Columbia as a for-hire driver through Defendant Lyft's rideshare service.

**DEFENDANT LYFT'S RIDESHARE SERVICE**

6.    Defendant Lyft's rideshare cellphone application (hereinafter the "Lyft App") pairs operators of passenger

2

vehicles-for-hire (hereinafter "Drivers") with Lyft App users seeking on-demand automobile transportation (hereinafter "Riders").

7. Riders use the Lyft App to request a Driver to provide transportation from their present location to a preset destination (a "ride"). Drivers provide their own vehicle and are compensated with a percentage of the fee assessed by Defendant Lyft for each ride.

8. To enable the ride, the Lyft App provides the Driver with information, including, _inter alia_, the Rider's pickup location and destination, additional stops along the route requested by the Rider, the Rider's name, profile photo, rating, Rider statistics (_e.g._, approximate number of prior rides and years as a Rider), and additional information from the Rider's profile (_e.g._, their preferred pronouns).

9. When a Driver accepts a ride, the Lyft App provides the Rider with information regarding the Driver, including, _inter alia_, the Driver's name, profile photo, preferred pronouns, rating, real-time location, and vehicle information such as the make, model, color, and tag number.

10. When the Rider is picked up, the Lyft App provides the Driver with turn-by-turn navigation to the Rider's destination. The Lyft App also provides the Rider with access to a live roadmap, and an expected arrival time.

11.   After the Rider is dropped off at their destination, the Lyft App requests that both the Rider and Driver provide a rating of the other's conduct. The Rider is then given a receipt and trip summary, at which time they can provide an additional tip to the Driver if desired.

12.   Defendant Lyft exerts significant control over its Drivers including, <u>inter alia</u>:

   a. Determining the fare charged for every ride;
   b. Terminating its Drivers' use of the Lyft App, with or without cause;
   c. Monitoring Driver performance through Rider feedback;
   d. Limiting Driver discretion to accept or reject Rider requests while using the Lyft app;
   e. Barring Drivers from arranging to provide for-hire ride services with its Riders outside of the Lyft App;
   f. Barring Drivers from transporting Riders in vehicles of certain makes, title, and model years;
   g. Requiring drivers to display a Lyft emblem, affixed on the bottom-right corner of a Driver's windshield, and the "Lyft Amp," a lighted Lyft logo affixed to the center of the Driver's dashboard.
   h. Requiring drivers to complete the Rape, Abuse and Incest National Network ("RAINN") training, as explained further below, as a precondition to use of the Lyft App; and
   i. Requiring drivers to complete a background check, as explained further below, as a precondition to use of the Lyft App.

## DEFENDANT LYFT'S FAILURE TO ADDRESS SEXUAL ASSAULT BY ITS DRIVERS

13.  As part of its marketing efforts, Defendant Lyft extensively touts its supposed measures to protect Rider safety. Defendant Lyft's Terms of Service present the Lyft App and its services as being "secure and safe," through measures including verification that Drivers meet safety requirements; investigating and resolving incidents; and blocking unsafe users from the Lyft platform.

14.  Defendant Lyft also boasts a "Policy against sexual assault, misconduct, and harassment" on its website, which states that it "prohibit[s] any form of sexual assault or sexual misconduct, including sexual harassment;" "[p]hysical touching, groping, pinching, kissing, hugging, patting, tickling, brushing against another person's body, assault, coerced sexual acts, impeding or blocking movements; [u]nwanted advances or propositions, such as repeated requests for dates or sexual favors; suggestive or obscene messages or invitations; . . . . staring, leering, or gestures; [c]atcalling; . . . . [v]erbal conduct such as lewd remarks, sex-based epithets, obscene comments, derogatory comments, sexually degrading words, slurs, sexual jokes, innuendo, or unwanted flirtations;" and "[g]raphic

comments about an individual's body, sexual prowess, or sexual deficiencies."[2]

15. To supposedly further those aims, Defendant Lyft advertises its requirement that Drivers "complete a safety program developed with RAINN, the largest anti-sexual violence organization in North America."[3] This meager training consists of watching 20-30 minutes of video programming, with no testing to verify the Driver's understanding of the material.[4] Defendant Lyft does not publicize the lackluster nature of this training, but rather promotes it as a robust anti-assault measure.

16. Defendant Lyft also claims that if a Driver is stopped for an abnormal amount of time before reaching the Rider's destination, an inquiry is sent to the Rider through the Lyft App. However, as explained further below, this feature fails to work as expected, and is negligently designed and implemented.

17. Despite these supposed safety measures, Lyft Riders experience high rates of sexual assault by Drivers. In 2021, Defendant Lyft revealed it received over 4,000 reports of sexual assault from Riders between January 1, 2017, and

---

[2] See Policy against sexual assault, misconduct, and harassment, LYFT WEBSITE, https://help.lyft.com/hc/e/all/articles/360059009074-Policy-against-sexual-assault-misconduct-and-harassment (Last accessed on Apr. 26, 2023).
[3] See Safety, LYFT WEBSITE, https://www.lyft.com/safety (Last accessed on Apr. 26, 2023).
[4] See Lyft's New Mandatory Safety Training Program, RIDESHARE GUY, https://therideshareguy.com/lyft-safety-training-program/ (Last Accessed on Apr. 26, 2023).

December 31, 2019.[5] That report also showed that instances of sexual assault increased year-after-year, and included 360 total reports of non-consensual sexual penetration and 2,300 reports of "non-consensual touching of a sexual body part."

18.    Defendant Lyft has failed to adequately address this problem. While Defendant Lyft markets itself as having taken serious measures to address sexual assault, in reality, Defendant Lyft fails to do even the bare minimum to assure Rider safety.

19.    Defendant Lyft does not require Drivers to undergo comprehensive background checks. While the District of Columbia requires all taxi drivers to undergo biometric fingerprinting to ensure that any crimes committed by the driver, nationwide, and regardless of alias, are uncovered, Defendant Lyft does not require the same from its for-hire Drivers. Defendant Lyft also does not conduct screening interviews of its Drivers, or request professional references. Nor does it provide mandatory training to its Drivers, apart from the deficient RAINN program described above.

20.    Defendant Lyft has also failed to implement any effective real-time Driver monitoring system, such as, _inter alia_, mandating the use of car cameras to be operated during the course of a ride; using GPS technology to allow a prompt and

---

[5] See _Lyft Community Safety Report_, Lyft, Inc. (2021).

effective response from trained employees and/or law enforcement in an emergency situation; or implementing an easily accessible emergency/panic button that allows a Rider to receive emergency assistance when required.

21. Instead, Defendant Lyft has embraced a reactive approach to sexual assault. Its sexual harassment policy states that when a sexual assault complaint is submitted:

> [Lyft] will conduct an impartial and timely investigation to reach reasonable conclusions based on the information collected. If an allegation is credible, Lyft will take action up to and including permanently removing a user's access to ride and/or drive with Lyft.[6]

Of course, this policy does nothing to address the sexual assault *before* it happens, nor does the mere removal of the assailant as a Lyft Driver provide much comfort to the victim.

22. As a result of Defendant Lyft's failures to address its known sexual assault pandemic, Riders, like the Plaintiff, continue to be preyed upon by Lyft's Drivers.

23. These failures are particularly striking in light of Defendant Lyft's active marketing efforts towards those most likely to be victimized by its Drivers. For example, through a partnership with It's On Us, Defendant Lyft represented itself as a good option for young women on college campuses coming home

---

[6] See Policy against sexual assault[…], LYFT WEBSITE, *supra*.

late from a party.[7] This campaign clearly demonstrates Defendant Lyft's prioritization of its bottom-line over the welfare of its Riders. Intoxicated, young, female Riders are enticed to use Lyft's services late at night, with no knowledge of its abysmal sexual assault record or threadbare safety precautions.

### FACTS SPECIFIC TO PLAINTIFF

24.  On April 30, 2022, at or around 12:45 a.m., Plaintiff Jane Doe booked a ride on the Lyft App for transport from 3181 Wilson Boulevard, Arlington, Virginia to a location in Washington, DC.

25.  Defendant Naoufal Jellali was the Lyft Driver assigned to the ride. When he arrived, Plaintiff was able to identify Defendal Jellali as her Driver by the Lyft branding materials affixed to his vehicle, and matching tag number provided in the Lyft App.

26.  Once Plaintiff entered the backseat, Defendant Jellali admitted he only accepted the ride after viewing her photo.

27.  Minutes into the ride, Defendant Jellali pulled over by the side of the road and demanded that Plaintiff exit the backseat. When she complied, Defendant Jellali approached her,

---

[7] See It's On Us Partners with Lyft, MEDIUM, https://medium.com/@ItsOnUs/its-on-us-partners-with-lyft-free-safe-rides-home-bf202af46d53 (Last accessed on Apr. 26, 2023).

and forcibly groped, kissed, and fondled her breasts for approximately seven minutes.

28. Defendant Jellali then demanded that Plaintiff return to the vehicle and instructed her to sit in the front passenger seat, to which she complied.

29. Throughout the ride, Defendant Jellali made unwanted sexual advances including, inter alia, sexual touching, groping, sexual advances, sexual innuendos, and inappropriate sexual comments.

30. Plaintiff pled with Defendant Jellali to cease his assault, and drive her to her destination, trying to remain calm while using her phone to record some of the conversation and Defendant Jellali's conduct. Defendant Jellali declined to drive her home, and stated that he had an erection and intended to have fun with her.

31. While Defendant Jellali was proceeding, Plaintiff tried but was unable to find an emergency notification button in the Lyft App. Her phone then dropped between her seat and the vehicle's center console during the course of the assault.

32. Shortly thereafter, Defendal Jellali pulled over to the side of the road where he pinned Plaintiff against his car, touched and fondled Plaintiff's breasts, and pressed his genitalia against her.

10

33.   After significant time had elapsed, Defendant Jellali relented and drove to Plaintiff's destination but refused to unlock the doors, and continued sexually assaulting her. Upon returning to the vehicle, Plaintiff was able to fish her phone out of the center console.

34.   When Defendant Jellali finally unlocked the doors to the vehicle at Plaintiff's destination, she ran to safety.

35.   The ride summary for Plaintiff's trip in the Lyft App shows that this ride took 58 minutes and 57 seconds. The Google Maps transit application provides an estimated time of "18-30 minutes" for this journey when undertaken at 12:45 a.m. on a Saturday.

36.   After making it to her destination, Plaintiff saw that she had received an automatic notification in the Lyft App stating that she had "been stopped for a while." See screenshot pictured below. Upon information and belief, Plaintiff alleges that this notification was received *after* the end of her ride. Defendant Lyft made no further attempts to assure the Plaintiff's safety, such as, inter alia, contacting its Driver, contacting law enforcement, and/or attempting to contact the Plaintiff by phone call, despite knowing that the prolonged stop was a cause for concern.

11



37.  Once the Plaintiff was finally able to escape the vehicle, Defendant Jellali called her twice, at 2:17 a.m. and 2:19 a.m., to continue his sexual harassment.

38.  Plaintiff subsequently reported the sexual assault to the Metropolitan Police Department and the case is actively under police investigation.

39.  Plaintiff also reported the sexual assault to Defendant Lyft via the Lyft App. Defendant Lyft's sole reparative effort was refunding Plaintiff's fare of $21.24 for the ride.

40.  Defendant Lyft never informed Plaintiff whether its Driver, Defendant Jellali, continues to drive for Lyft, or advised

12

as to any subsequent investigation into the Plaintiff's sexual assault at the hands of its driver.

## COUNT I
(Negligent Design – Defendant Lyft, Inc.)

Plaintiff repleads and incorporates by reference herein, each and every allegation set forth above, and further states as follows:

41. Defendant Lyft designed, manufactured, and distributed the Lyft App.

42. Defendant Lyft owed a duty to its Riders, including Plaintiff, to design the Lyft App so that it would perform as an ordinary consumer would reasonably expect when used in its intended manner.

43. As set forth above, Defendant Lyft's Terms of Service advertise the Lyft App as being "secure and safe," through supposed measures such as ensuring Drivers meet "safety requirements," "investigating and resolving incidents," and blocking "unsafe users" from the Lyft platform. Defendant Lyft claims in its marketing that its Drivers have undergone sexual assault training, but fails to notify Riders of the lackluster nature of this training. Defendant Lyft also claims that its Drivers have undergone background checks, but does not inform Riders that those background checks are below the standard for taxi drivers operating in D.C. Rather, Defendant Lyft markets the

Lyft App as a safe option for young women to get home late at night.

44.    A reasonable consumer, particularly in light of the above-referenced marketing, would expect the Lyft App to have safety features including, inter alia, only pairing Riders with Drivers who have undergone comprehensive background checks; only pairing Riders with Drivers who have undergone comprehensive sexual assault training; ride monitoring systems that would detect unusual ride activity and ensure Rider safety through measures, including, but not limited to, contacting the Driver and/or law enforcement; and conspicuous, responsive emergency notification systems to be utilized by a Rider in case of an emergency.

45.    Defendant Lyft breached the duties owed to Plaintiff. Defendant Lyft designed, manufactured, and distributed the defective Lyft App, which pairs Riders with dangerous, untrained Drivers, without any effective features in place to automatically provide aid in emergency situations, and without any conspicuous features in place that might enable its Riders to effectively request emergency assistance.

46.    As a direct and proximate result of the Defendant's aforesaid negligent conduct, Plaintiff was sexually assaulted as set forth above, and has experienced, and continues to experience, severe emotional distress, including severe pain and suffering,

14

mental anguish, fear, inconvenience, nervousness, indignity, insult, humiliation, embarrassment, all of which may be permanent in nature.

WHEREFORE, Plaintiff Jane Doe demands judgment of and against Defendant Lyft, Inc., in the full amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) in compensatory damages, plus pre-judgment interest and costs.

### COUNT II
(Failure to Warn of Design Defect – Defendant Lyft, Inc.)

Plaintiff repleads and incorporates by reference herein, each and every allegation set forth above, and further states as follows:

47. Defendant Lyft knew, or reasonably should have known, that Riders were at risk of being assaulted by Drivers due to the negligent design of the Lyft App, including its lack of safety features, as set forth in Paragraph 45. Defendant Lyft further knew, or reasonably should have known, that this danger was especially acute for a lone female Rider traveling late at night, such as the Plaintiff.

48. Defendant Lyft knew, or reasonably should have known, that Lyft Riders would not and could not appreciate the danger posed by using the Lyft App, particularly in light of its contrary marketing, as set forth above.

49. Defendant Lyft owed a reasonable duty to its Riders,

15

such as the Plaintiff, to warn of the dangers that its Riders would reasonably fail to appreciate, particularly when due to its own conduct, that Defendant Lyft knew, or reasonably should have known, existed.

50. Defendant Lyft breached the duties owed to the Plaintiff by, _inter alia_, failing to advise Plaintiff as to the Lyft App's inability to procure trained, vetted Drivers; failing to advise Plaintiff of its lackluster, defective, and ineffective features for monitoring Driver misconduct; and/or otherwise failing to warn Plaintiff of the defective conditions of the Lyft App posing a danger to her safety.

51. As a direct and proximate result of the Defendant's aforesaid negligent conduct, Plaintiff suffered injuries and damages as set forth above in Paragraph 46.

WHEREFORE, Plaintiff Jane Doe demands judgment of and against Defendant Lyft Inc., in the full amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) in compensatory damages, plus pre-judgment interest and costs.

### COUNT III
(Strict Liability for Defective Product – Defendant Lyft, Inc.)

Plaintiff repleads and incorporates by reference herein, each and every allegation set forth above, and further states as follows:

52. As set forth above, the Lyft App was defective, and

16

posed an unreasonable risk to the safety of Riders, such as the Plaintiff, when it was placed into the stream of commerce by Defendant Lyft.

53. Defendant Lyft designed, manufactured, and placed the Lyft App, its primary consumer product, into the stream of commerce, despite actual and/or constructive knowledge of the Lyft App's many defects.

54. Consequently, Defendant Lyft is strictly liable for the injuries and damages suffered by Plaintiff, as set forth in Paragraph 46, which were directly and proximately caused by the Lyft App's numerous defects.

WHEREFORE, Plaintiff Jane Doe demands judgment of and against Defendant Lyft Inc., in the full amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) in compensatory damages, plus pre-judgment interest and costs.

### COUNT IV
(Battery – Defendants Lyft, Inc. and Naoufal Jellali)

Plaintiff repleads and incorporates by reference herein, each and every allegation set forth above, and further states as follows:

55. Defendant Jellali, and Defendant Lyft, acting through its actual and/or apparent agent, servant, employee, partner, and/or co-venturer, Defendant Jellali, forcibly groped, touched, kissed, fondled, pinned down, and grinded upon Plaintiff, without

her consent, and without just cause or provocation, as set forth above.

56. As a direct and proximate result of Defendants aforesaid battery, Plaintiff suffered injuries and damages as set forth above in Paragraph 46.

WHEREFORE, Plaintiff Jane Doe demands judgment of and against Defendant Lyft, Inc. and Defendant Naoufal Jellali, jointly and severally, in the full amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) in compensatory damages, and Three Million Five Hundred Thousand Dollars ($3,500,000.00) in punitive damages, plus pre-judgment interest and costs.

### COUNT V
(Assault – Defendants Lyft, Inc. and Naoufal Jellali)

Plaintiff repleads and incorporates by reference herein, each and every allegation set forth above, and further states as follows:

57. Defendant Jellali, and Defendant Lyft, acting through its actual and/or apparent agent, servant, employee, partner, and/or co-venturer, Defendant Jellali, put Plaintiff in reasonable apprehension of imminent harmful and offensive contact, by, inter alia, restraining her in the Lyft vehicle; making lewd and sexually suggestive comments; and fondling, groping, kissing, and grinding upon Plaintiff without consent, as set forth above.

18

58.  As a direct and proximate result of the Defendants' aforesaid assault, Plaintiff suffered injuries and damages as set forth above in Paragraph 46.

WHEREFORE, Plaintiff Jane Doe demands judgment of and against Defendant Lyft, Inc. and Defendant Naoufal Jellali, jointly and severally, in the full amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) in compensatory damages, and Three Million Five Hundred Thousand Dollars ($3,500,000.00) in punitive damages, plus pre-judgment interest and costs.

## COUNT VI
### (False Imprisonment – Defendants Lyft, Inc. and Naoufal Jellali)

Plaintiff repleads and incorporates by reference herein, each and every allegation set forth above, and further states as follows:

59.  Defendant Jellali, and Defendant Lyft, acting through its actual and/or apparent agent, servant, employee, partner, and/or co-venturer, Defendant Jellali, unlawfully detained and restrained Plaintiff in Defendant Jellali's vehicle, against her will, as set forth above.

60.  As a direct and proximate result of the Defendants' aforesaid false imprisonment, Plaintiff suffered injuries and damages as set forth above in Paragraph 46.

WHEREFORE, Plaintiff Jane Doe demands judgment of and against Defendant Lyft, Inc. and Defendant Naoufal Jellali,

jointly and severally, in the full amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) in compensatory damages, and Three Million Five Hundred Thousand Dollars ($3,500,000.00) in punitive damages, plus pre-judgment interest and costs.

### COUNT VII
(Intentional Infliction of Emotional Distress – Defendants Lyft, Inc. and Naoufal Jellali)

Plaintiff repleads and incorporates by reference herein, each and every allegation set forth above, and further states as follows:

61.   Defendant Jellali, and Defendant Lyft acting through its actual and/or apparent agent, servant, employee, partner, and/or co-venturer, Defendant Jellali, did by extreme, outrageous, intentional, willful, malicious, and intolerable conduct, humiliate, embarrass, shock, scar, batter, and frighten Plaintiff as set forth above.

62.   As a direct and proximate result of Defendants' aforesaid intentional infliction of emotional distress, Plaintiff suffered injuries and damages as set forth above in Paragraph 46.

WHEREFORE, Plaintiff Jane Doe demands judgment of and against Defendant Lyft, Inc. and Defendant Naoufal Jellali, jointly and severally, in the full amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) in compensatory damages, and Three Million Five Hundred Thousand Dollars ($3,500,000.00) in punitive damages, plus pre-judgment interest and costs.

## COUNT VIII
(Negligence – Defendants Lyft, Inc. and Naoufal Jellali)

Plaintiff repleads and incorporates by reference herein, each and every allegation set forth above, and further states as follows:

63. Defendant Jellali, and Defendant Lyft, directly, and acting through its actual and/or apparent agent, servant, employee, partner, and/or co-venturer, Defendant Jellali, owed a continuing duty to exercise ordinary care to protect Riders, such as the Plaintiff, from foreseeable harms, including sexual battery, that were likely to cause serious harm and/or emotional distress.

64. Defendant Jellali, and Defendant Lyft, directly, and acting through its actual and/or apparent agent, servant, employee, partner, and/or co-venturer, Defendant Jellali, breached the duties owed to the Plaintiff by subjecting her to a terrifying, prolonged sexual assault, as set forth above.

65. Defendant Lyft further breached the duties owed to Plaintiff by, inter alia, failing to provide adequate safeguards to protect its Rider, the Plaintiff; failing to exercise adequate control over its Driver, Defendant Jellali, so as to prevent him from causing harm to its Rider, the Plaintiff; and failing to design the Lyft App with ordinary and reasonable care to provide adequate security to its Riders, including the Plaintiff, as set

forth above.

66. As a direct and proximate result of the Defendants' aforesaid negligence, Plaintiff suffered injuries and damages as set forth above in Paragraph 46.

WHEREFORE, Plaintiff Jane Doe demands judgment of and against Defendant Lyft, Inc. and Defendant Naoufal Jellali, jointly and severally, in the full amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) in compensatory damages, plus pre-judgment interest and costs.

### COUNT IX
(Negligent Hiring, Training, Supervision – Defendant Lyft, Inc.)

Plaintiff repleads and incorporates by reference herein each and every allegation set forth above and further states as follows:

67. At all relevant times herein, Defendant Lyft owed a continuing duty to reasonably, carefully, and conscientiously train, select and supervise its personnel to reasonably assure that its actual and/or apparent agents, servants, and/or employees were not likely to, inter alia, sexually assault, sexually harass, grope, and imprison those, like Plaintiff, who were utilizing its rideshare service.

68. Defendant Lyft breached the duties owed to the Plaintiff, by:

22

    a. Failing to adequately screen Defendant Jellali prior to allowing him to work as a Driver, including, <u>inter alia</u>, failing to perform a comprehensive background check including biometric fingerprinting, failing to interview Defendant Jellali, failing to contact professional references with regards to Defendant Jellali, and/or otherwise failing to determine Defendant Jellali's competency to safely and appropriately transport its Riders;

    b. Failing to adequately train Defendant Jellali prior to allowing him to work as a Driver, including, <u>inter alia</u>, failing to mandate comprehensive sexual assault and/or safety training; and

    c. Failing to adequately supervise Defendant Jellali while he was working as a Driver, including, <u>inter alia</u>, failing to implement video monitoring, failing to implement an emergency warning system that would notify trained personnel or law enforcement in the event of an emergency, and/or otherwise failing to implement systems to adequately detect and respond to the sexual assaults by its Drivers that Defendant Lyft knew, or should have known, were regularly occurring.

69. Defendant Lyft's negligent hiring, training, and supervision of Defendant Jellali was further unreasonable considering that Defendant Jellali was allowed to transport women, such as the Plaintiff, who were traveling alone late and night, and therefore particularly vulnerable to sexual assault and harassment.

70. As a direct and proximate result of the Defendant's aforesaid negligent hiring, training and supervision, Plaintiff was subjected to a prolonged sexual assault, and suffered injuries

and damages as set forth above Paragraph 46.

WHEREFORE, Plaintiff Jane Doe demands judgment of and against Defendant Lyft Inc., in the full amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) in compensatory damages, plus pre-judgment interest and costs.

### COUNT X
(Violations of D.C. Consumer Protection Procedures Act – Defendant Lyft, Inc.)

Plaintiff repleads and incorporates by reference herein, each and every allegation set forth above, and further states as follows:

71.   Pursuant to the D.C. Consumer Protection Procedures Act, it is unlawful for any company to misrepresent as to a material fact which has a tendency to mislead; or fail to state a material fact if such failure tends to mislead, including through the use of innuendo or ambiguity as to a material fact. See D.C. Code § 28-3904.

72.   Defendant Lyft violated the D.C. Consumer Protections Procedures Act by making false statements including, inter alia, warranting that the Lyft App was "safe and secure;" falsely advertising its Drivers' RAINN training in a manner suggesting that it was comprehensive sexual assault training; falsely advertising the Lyft App as a safe mode of transportation for young women traveling late at night; falsely advertising that the Lyft App would reliably send a notification to a Rider in the

24

event of an unusual delay when in actuality, that notification may not be sent until the ride was concluded; and/or falsely advertising that the Lyft App would send a notification to a Rider in the event of an unusual delay in a manner which would lead a reasonable user, like Plaintiff, to believe that Lyft actively monitored its Drivers so as to actively intervene in an emergency situation.

73.    Defendant Lyft further violated the D.C. Consumer Protections Procedures Act by omitting material facts including, inter alia, that Lyft's Drivers are not adequately vetted, trained and supervised to ensure Rider safety; that Lyft's Drivers are not subjected to adequate, comprehensive background checks or pre-screening; that Lyft's Drivers do not receive adequate, comprehensive, sexual assault training; and that the Lyft App is not adequately designed and manufactured to ensure Rider safety, as set forth above.

74.    With regards to the above-referenced misstatements and omissions, Defendant Lyft knew, or should have known, that its representations were false, incomplete, and/or had a tendency to mislead a reasonable consumer, such as Plaintiff, into believing that the Lyft App and rideshare service were safer and more secure than they are in actuality. Defendant Lyft further intended that the Plaintiff and others similarly situated would rely on these misstatements and omissions in choosing to use its product over

those of its competitors.

75.   As a direct and proximate result of Defendant's violations of the D.C. Consumer Protection Procedures Act, Plaintiff suffered injuries and damages as set forth above in Paragraph 47.

WHEREFORE, Plaintiff demands judgment of and against Defendant Lyft for all remedies available under D.C. Code § 28-3905(k)(2), including, but not limited to, treble damages or $1,500 per violation, whichever is greater, reasonable attorney's fees and costs, punitive damages, and an injunction against the use of the unlawful trade practices detailed above.

Respectfully submitted,

**CHAIKIN, SHERMAN, CAMMARATA
& SIEGEL, P.C.**

Joseph Cammarata
DC Bar No. 389254


Kayann S. Chambers
DC Bar No. 241462
1232 17th Street, N.W.
Washington, DC 20036
Tel: (202) 659-8600
Fax: (202) 659-8680
joe@dc-law.net
chambers@dc-law.net
*Attorneys for Plaintiff*

26

## JURY DEMAND

Plaintiff hereby requests a trial by jury as to all issues triable herein.

_____
Joseph Cammarata

# Superior Court of the District of Columbia

### CIVIL DIVISION- CIVIL ACTIONS BRANCH

### INFORMATION SHEET

| | |
|---|---|
| Jane Doe | Case Number: _____ 2023-CAB-002577 _____ |
| vs | Date: __ April 26, 2023 __ |
| Lyff, Inc., et al. | ☐ One of the defendants is being sued in their official capacity. |

| | |
|---|---|
| Name: *(Please Print)* <br> Joseph Cammarata <br> Firm Name: <br> Chaikin, Sherman, Cammarata & Siegel, P.C. <br> Telephone No.:        Six digit Unified Bar No.: <br> 202-659-8600              389254 | Relationship to Lawsuit <br> ☒ Attorney for Plaintiff <br> ☐ Self (Pro Se) <br> ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury     ☒ 6 Person Jury          ☐ 12 Person Jury

Demand: $ 36,500,000+ _____          Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____     Judge: _____     Calendar #:_____

Case No.:_____     Judge: _____     Calendar#:_____

---

**NATURE OF SUIT:**     *(Check One Box Only)*

**A. CONTRACTS**                                          **COLLECTION CASES**

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
     Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
     Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
     Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
     Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
     Under $25,000 Consent Denied

---

**B. PROPERTY TORTS**

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

---

**C. PERSONAL TORTS**

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile,
     Not Malpractice)

☒ 17 Personal Injury- (Not Automobile,
     Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE          IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  - (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  - (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  - Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  - Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  - Judgment [ D.C. Code §
  - 2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  - 42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  - [Rule 28-1 (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  - (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D.  REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_/s/ Joseph Cammarata_

Attorney's Signature

April 26, 2023

Date

CV-496/ June 2015

eFiled
04/27/2023 2:40:17 PM
Superior Court
of the District of Columbia

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

**JANE DOE**                            :
                                        :
    Plaintiff,               :
                                        :
       v.               :      **Case No.**
                                        :      2023-CAB-002577
**LYFT, INC.,** **et al.**              :
                                        :
    Defendants.              :
_____ :

### PLAINTIFF'S MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM, AND TO SEAL *EXHIBIT A*

COMES NOW Plaintiff "Jane Doe,"[1] by and through her counsel, Joseph Cammarata, Esq., Kayann S. Chambers, Esq., and the law firm of Chaikin Sherman Cammarata & Siegel, P.C., and hereby requests that the Court protect Plaintiff's identity in this sexual assault case, by (1) permitting her to proceed under the pseudonym "Jane Doe," (2) permitting her not to publicly disclose her address, and (3) prohibiting Defendants from disclosing her identity. Plaintiff explains further as follows:

### FACTUAL & PROCEDURAL BACKGROUND

This action arises out of a sexual assault perpetrated by Defendant Naoufal Jellali, a Lyft Driver, while Plaintiff was on an active Lyft ride. Throughout the ride, Defendant Jellali made unwanted sexual advances towards Plaintiff to include,

---

[1] Plaintiff's actual name, and address, are stated in the Declaration attached hereto as *Exhibit A*.

sexual touching, including fondling Plaintiff's breasts, kissing Plaintiff and pressing his genitalia against her. Defendant Jellali's misconduct has compelled Plaintiff to obtain mental health therapy. Plaintiff made a criminal complaint against Defendant Jellali, and there is an active criminal investigation.

In the proposed Complaint in this action, Plaintiff charges Defendants with *inter alia*, negligence, intentional torts and, and seeks compensatory damages.

## ARGUMENT

The Superior Court Civil Procedure Rules generally require that a complaint disclose a plaintiff's name and address. *See* Super. Ct. Civ. Pro. R. 10(a), 10-I(b), 17(a).

Nevertheless, our Court of Appeals has *sub silentio* recognized the power of the trial court to permit parties to proceed pseudonymously, *see, e.g., Roe v. Doe*, 73 A.3d 132, 133 n.1 (D.C. 2013), as has the Supreme Court of the United States, *see, e.g., Roe v. Wade,* 410 U.S. 113, 120 n.4 & n.5 (1973), *overruled on other grounds*, *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022). Numerous federal courts of appeal and district courts have explicitly approved of that power, as well. *See, e.g., Doe v. Megless*, 654 F.3d 404, 408-10 (3d. Cir. 2011); *Doe v. De Amigos, LLC*, Civ. Act. No. 11-1755, 2012 U.S. Dist. LEXIS 190501 (D.D.C. Apr. 30, 2012). Whether to permit a party

2

Case 1:23-cv-02006-APM   Document 1-2   Filed 07/12/23   Page 44 of 56

to proceed pseudonymously lies within the trial court's
discretion. *See James v. Jacobsen*, 6 F.3d 233, 238 (4th Cir.
1993).

In considering a request to allow a plaintiff to proceed
pseudonymously, courts balance the public interest in access to
trials with the legitimate interests of the party making the
request. *See Nat'l Ass'n of Waterfront Emp'rs v. Chao*, 587 F.
Supp. 2d 90, 98 (D.D.C. 2008). In *Chao*, the U.S. District Court
for the District of Columbia employed a five-factor balancing
test that considers:

> (1) Whether the justification asserted by the
> requesting party is merely to avoid the annoyance and
> criticism that may attend any litigation or is to
> preserve privacy in a matter of a sensitive and highly
> personal nature; (2) whether identification poses a
> risk of retaliatory physical or mental harm to the
> requesting party or even more critically, to innocent
> non-parties; (3) the ages of the persons whose privacy
> interests are sought to be protected; (4) whether the
> action is against a governmental or private party; and
> (5) the risk of unfairness to the opposing party from
> allowing an action against it to proceed anonymously.

*Id.* at 99. Here, the *Chao* factors taken together weigh in
favor of granting Plaintiff's request for leave to proceed
under a pseudonym.

First, Plaintiff seeks to proceed pseudonymously to
preserve her own privacy in this highly sensitive and personal
matter, which risks further stigmatization and trauma. This
case involves humiliating acts of sexual assault by a Lyft

3

Driver, Defendant Jellali. Future filings are likely to include explicit accounts of the incident.  Commentators have recognized that involuntarily disclosing the identity of victims of such acts results in real psychological harm to victims far more severe than "mere embarrassment." *See* Paul Marcus & Tara L McMahon, *Limiting Disclosure of Rape Victims' Identities,* 64 S. CAL. L. REV. 1020, 1048-49 (1991).

Furthermore, this Court and others have repeatedly held that a victim of sexual abuse may be entitled to proceed pseudonymously in litigation arising out of that abuse.  By an Order attached hereto as *Exhibit B*, this Court granted such relief in *Jane Doe 3 v. Georgetown Synagogue - Kesher Israel Congregation*, 2015 CA 0078143 B, wherein the plaintiffs sued a rabbi who committed voyeurism by installing secret cameras in a changing room.  Likewise, the Court entered a similar Order, attached hereto as *Exhibit C*, in the case of *Jane Roe 1 v. Latin American Montessori Bilingual Public Charter School*, 2018 CA 0001331 B, wherein the plaintiffs sued a schoolteacher for sexually abusing his students. More recently, the Court entered a similar Order, attached hereto as *Exhibit D*, in the case of *Jane Doe v. Metro Lab LLC, et al.*, 2022-CA-003728-B, wherein the plaintiff sued a Physician's Assistant and his employer for a sexual assault that occurred during what was supposed to be a medical examination.

4

To the same effect, *see, e.g., Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997) ("fictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses"); *E.E.O.C. v. ABM Indus., Inc.,* 249 F.R.D. 588, 593-94 (E.D. Cal. 2008) (permitting plaintiffs to proceed under pseudonym in sexual harassment case); *De Amigos*, 2012 U.S. Dist. LEXIS 190501 at *4 ("Courts have granted anonymity to protect against disclosure of a wide range of issues involving matters of the utmost intimacy, including sexual assault." (quoting *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195-96 (E.D.N.Y. 2006)); *Doe v. Bodwin,* 326 N.W. 2d 473, 476 (Mich. Ct. App. 1982) (recognizing court's discretion to permit under pseudonym, in case arising out of alleged sexual abuse by plaintiff's psychologist).  Courts have noted that "the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes."  *De Amigos*, 2012 U.S. Dist. LEXIS 190501 at *5 (quoting *Kolko*, 242 F.R.D. at 195-96).

Regarding the second *Chao* factor, "publicity could exacerbate the psychological harm that [Plaintiff] has already experienced," *id.*, given that the lawsuit will require the graphic disclosure of details of the sexual abuse that Defendant Jellali committed during a Lyft ride.  In *De Amigos*,

5

the U.S. District Court for the District of Columbia found this concern to weigh in favor of permitting a pseudonym.

The third *Chao* factor (age) does not apply here, because Plaintiff was an adult.

The fourth *Chao* factor weighs in favor of allowing Plaintiffs to under a pseudonym. This factor looks at whether the defendant is a government or private party. The significance of the distinction lies in the fact that a private defendant, unlike a government defendant, has a reputation to protect against anonymous accusations. However, Defendant Lyft is not an individual and is not accused of personally committing sexual abuse; thus, the risk of a stigma attaching to Defendant Lyft is not of particular concern here. *See De Amigos*, 2012 U.S. Dist. LEXIS 190501 at *7 (granting right to proceed under pseudonym in sexual assault action brought against, *inter alia*, venue that served plaintiff alcohol prior to assault). And although Defendant Jellali is an individual, there is already an active criminal investigation open against him, and practically cannot suffer additional stigma by Plaintiff's accusation. *See also Kolko*, 242 F.R.D. at 195-96 (permitting plaintiff to proceed under pseudonym in sexual assault suit against Orthodox Jewish religious school and rabbi, because public interest at stake made case akin to one against government).

As to the final *Chao* factor, there is no risk of unfairness to the opposing parties.  Plaintiff will serve *Exhibit A* (containing her name and address) together with process, upon Defendants.

WHEREFORE, Plaintiff Jane Doe respectfully requests that the Court grant the foregoing Motion.

Respectfully submitted,

**CHAIKIN, SHERMAN,**
    **CAMMARATA & SIEGEL, P.C.**

Joseph Cammarata
DC Bar No. 389254
Kayann S. Chambers
DC Bar No. 241462
1232 17th Street, N.W.
Washington, DC 20036
Tel: (202) 659-8600
Fax: (202) 659-8680
joe@dc-law.net
chambers@dc-law.net
Attorneys for Plaintiff

### RULE 12-I CERTIFICATION

I certify that no Defendant has been served in this action. The undersigned was therefore unable to confer with counsel pursuant to Rule 12-I.

Joseph Cammarata

7

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Plaintiff's Motion for Leave to Proceed Under Pseudonym, and to Seal *Exhibit A*, will be served upon Defendants along with process.

_____
Joseph Cammarata

8

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

JANE DOE                          :

    Plaintiff,           :

        v.               :      Case No.

LYFT, INC., <u>et</u> <u>al</u>.        :

    Defendants.       :

                               :

### DECLARATION OF PLAINTIFF'S IDENTITY

I, Joseph Cammarata, Esq., counsel for Plaintiff, solemnly affirm under penalty of perjury that to the best of my knowledge, information, and belief, the Plaintiff in this matter is Tabitha Jackson, 1111 Army Navy Drive, Apr. 312, Arlington, VA 22202.

                             _____

                             Joseph Cammarata

**EXHIBIT**

**A**

# IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

Jane Doe 3, et al.                          *

    *Plaintiffs*,                      *

    v.                              *    Case No. 15 - 0 0 7 8 1 4

The Georgetown Synagogue –              *
Kesher Israel Congregation, et al.      *

    *Defendants*.                     *

                    *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO PROCEED UNDER A PSEUDONYM AND TO SEAL *EXHIBIT A* TO THE INSTANT MOTION

Upon consideration of Plaintiffs' Motion to For Leave to Proceed Under a

Pseudonym and to Seal *Exhibit A* to the Instant Motion, and finding good cause supporting

the same, it is on this 9th day of October, 2015, hereby ORDERED that the Motion is

GRANTED as follows:

    A. *Exhibit A* to the Motion, shall be and hereby is SEALED; and,

       furthermore

    B. The names of the Plaintiffs shall be and are hereby SEALED on

       the public record; and, furthermore,

    C. The Plaintiffs shall be referred to, respectively, as "Jane Doe 3,"

       "John Doe 3," "Jane Doe 4," "John Doe 4," "Jane Doe 5," "Jane

       Doe 6," "Jane Doe 7," "Jane Doe 8," and "Jane Doe 9" in all

       pleadings and papers filed in the above-captioned matter; and,

       furthermore,

**EXHIBIT**

B

D. The clerk of the Court and all pleadings and other documents filed with the Court shall reflect the address of the Plaintiffs to be, respectively:

Jane Doe 3
c/o Chaikin, Sherman, Cammarata & Siegel, P.C.
1232 17th Street NW
Washington, D.C. 20036

John Doe 3
c/o Chaikin, Sherman, Cammarata & Siegel, P.C.
1232 17th Street NW
Washington, D.C. 20036

Jane Doe 4
c/o Chaikin, Sherman, Cammarata & Siegel, P.C.
1232 17th Street NW
Washington, D.C. 20036

John Doe 4
c/o Chaikin, Sherman, Cammarata & Siegel, P.C.
1232 17th Street NW
Washington, D.C. 20036

Jane Doe 5
c/o Chaikin, Sherman, Cammarata & Siegel, P.C.
1232 17th Street NW
Washington, D.C. 20036

Jane Doe 6
c/o Chaikin, Sherman, Cammarata & Siegel, P.C.
1232 17th Street NW
Washington, D.C. 20036

Jane Doe 7
c/o Chaikin, Sherman, Cammarata & Siegel, P.C.
1232 17th Street NW
Washington, D.C. 20036

Jane Doe 8
c/o Chaikin, Sherman, Cammarata & Siegel, P.C.
1232 17th Street NW
Washington, D.C. 20036

15

Jane Doe 9
c/o Chaikin, Sherman, Cammarata & Siegel, P.C.
1232 17th Street NW
Washington, D.C. 20036

_John Bayly_

Judge,
Superior Court for the District of Columbia

CC:

Ira Sherman
Joseph Cammarata
Allan M. Siegel
Matthew W. Tievsky
CHAIKIN, SHERMAN,
  CAMMARATA & SIEGEL, P.C.
1232 17th Street, N.W.
Washington, D.C. 20036

16

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

JANE ROE 1, et al.                    :

    Plaintiffs,                    :

    v.                              :

LATIN AMERICAN MONTESSORI
BILINGUAL PUBLIC CHARTER
SCHOOL, et al.                        :

    Defendants.                     :

**FILED** 18 - 0001351
CIVIL ACTIONS BRANCH
FEB 26 2018
Superior Court
of the District of Columbia
Washington, D.C.

### ORDER

Upon consideration of Plaintiffs' Motion for Leave to Proceed Anonymously and to

Seal *Exhibit B*, it is on this 26th day of February, 2018, hereby ORDERED that the Motion is

GRANTED as follows:

    A. The adult Plaintiffs in this action are hereinafter permitted to proceed under the

pseudonyms employed in the Complaint;

    B. The clerk of the Court and all pleadings and other documents filed with the Court

shall reflect the address of every Plaintiff to be:

    c/o Chaikin, Sherman, Cammarata & Siegel, P.C.
    1232 17th Street NW
    Washington, D.C. 20036

and;

    C. The identity of each and every Plaintiff (including the initials of his or her name)

is hereby sealed, *subject to reconsideration of modification at a later time
by the judge to whom this
case is assigned for trial.* HG

                            Judge,
                            Superior Court for the District of Columbia

*cont'd*





EXHIBIT

C

CC:

Joseph Cammarata
Matthew W. Tievsky
CHAIKIN, SHERMAN,
   CAMMARATA & SIEGEL, P.C.
1232 17th Street, N.W.
Washington, D.C. 20036

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **JANE DOE** | : |
| Plaintiff, | : |
| | : |
| v. | :   **Case No.** |
| | : |
| **METRO LAB LLC, et al.** | : |
| | : |
| Defendants. | : |

### ORDER

Upon consideration of Plaintiff's Motion for Leave to Proceed Under Pseudonym, and to Seal *Exhibit A*, it is on this 12th day of August, 2022, hereby ORDERED that the Motion is GRANTED as follows:

    A.  Plaintiff is hereinafter permitted to proceed as "Jane Doe" in this matter;

    B.  The Clerk of the Court and all pleadings and other documents filed with the Court shall reflect the address of the Plaintiff to be:

        c/o Chaikin, Sherman, Cammarata & Siegel, P.C.
        1232 17th Street NW
        Washington, D.C. 20036

and;

    C.  The identity of Plaintiff is hereby sealed.

_____
Michael Rankin, Senior Judge
Sitting as Judge-in-Chambers

CC:

Joseph Cammarata
Matthew W. Tievsky
CHAIKIN, SHERMAN,
  CAMMARATA & SIEGEL, P.C.
1232 17th Street, N.W.
Washington, D.C. 20036

**PLAINTIFF'S
EXHIBIT
D**